STATE OF NORTH CAROLINA v. JIMMY KELLY SOLES

No. 9327SC1273

(Filed 5 July 1995)

## 1. Conspiracy § 45 (NCI4th)— acquittal of coconspirators in separate trial—conviction of defendant upheld

The conviction of one defendant in a conspiracy prosecution will be upheld where all alleged coconspirators are acquitted in a separate subsequent trial.

STATE v. SOLES

[119 N.C. App. 375 (1995)]

**Am Jur 2d, Conspiracy §§ 24-26.**

**Prosecution or conviction of one conspirator as affected by disposition of case against coconspirators. 19 ALR4th 192.**

2. **Evidence and Witnesses § 1222 (NCI4th)— statement resulting from polygraph examination—voluntariness of statement**

There was no merit to defendant's contention that the trial court committed reversible error in denying his motion to suppress a statement given by him as a result of a polygraph examination because the statement was obtained in a coercive and oppressive manner, since defendant's first statement was made when defendant was not under arrest but was free to leave, and it was made voluntarily; because defendant was not under arrest, he was not entitled to *Miranda* warnings before making the statement; his second statement was therefore not the fruit of an earlier illegally obtained statement; the second statement was voluntary in that defendant voluntarily came to the police station, voluntarily submitted to the polygraph, and was free to leave at any time; and neither the polygraph operator's asking questions off the polygraph nor questioning by officers vitiated defendant's waiver of his *Miranda* warnings with respect to the second statement.

**Am Jur 2d, Evidence § 749.**

**Admissibility in evidence of confession made by accused in anticipation of, during, or following polygraph examination. 89 ALR3d 230.**

**Admissibility of polygraph evidence at trial on issue of voluntariness of confession made by accused. 92 ALR3d 1317.**

3. **Evidence and Witnesses § 1470 (NCI4th)— coconspirator's possession of weapon—admissibility of evidence**

In a prosecution of defendant for conspiracy to commit murder, the trial court did not err in admitting testimony related to defendant's coconspirator's possession of a pistol of the same caliber and type which killed the victim.

**Am Jur 2d, Conspiracy § 40.**

**STATE v. SOLES**

[119 N.C. App. 375 (1995)]

Appeal by defendant from judgment entered 30 June 1993 by Judge Robert D. Lewis in Gaston County Superior Court. Heard in the Court of Appeals 17 October 1994.

*Attorney General Michael F. Easley, by Special Deputy Attorney General James P. Erwin, Jr., for the State.*

*Childers, Fowler & Childers, P.A., by David C. Childers, for defendant appellant.*

COZORT, Judge.

Defendant was indicted for second degree murder, armed robbery and conspiracy to commit murder. On 11 February 1993, defendant was convicted of conspiracy to commit murder and was sentenced to eight years in prison. On appeal, defendant contends the trial court erred by (1) denying defendant's motion to suppress a statement given by him as a result of a polygraph examination because this statement was obtained in a coercive and oppressive manner, (2) overruling defendant's objection and denying his motion to strike irrelevant testimony concerning the purchase of a firearm because this firearm was never connected to the murder which defendant was alleged to have conspired to commit, and (3) denying defendant's request for a special instruction which would have allowed the jury to consider evidence which might have tended to show that the crime was committed by someone else. Defendant also filed a motion for appropriate relief seeking to have his conviction reversed due to dismissal of charges against his coconspirator, Donal Wright. We deny the motion for appropriate relief and find no error in the trial.

On 23 January 1990, the badly decomposed body of a black male with gunshot wounds was found in the Mountain Island Dam area north of Mt. Holly, North Carolina. This body was identified as Shawn Ford. Shawn Ford was a drug dealer who sold to Jimmy Soles, defendant herein, and Donal Wright. During early December 1989, Wright approached defendant Soles with a scheme to rob and murder Ford. The plan was for defendant to lure Ford to a remote location on the pretense of making a cocaine buy. At that point, Wright was to kill Ford and share the stolen cocaine with defendant.

On 9 February 1990, officers with the Gaston County Police Department questioned defendant about his involvement in Ford's death. On 15 February 1990, defendant submitted to a polygraph

examination at the request of the Gaston County Police Department. Joseph A. Kenny, a Forensics Polygraph Examiner, administered the polygraph. Defendant was given Miranda warnings before and after the polygraph examination. During this examination, Kenny confronted defendant about observed patterns of deception. Defendant then made a statement which served as the basis for indictments for murder, conspiracy to commit murder, and armed robbery. On 23 January 1992, defense counsel made a motion to suppress defendant's statement. This motion was denied by Judge Robert E. Gaines on 13 March 1992, and at trial by Judge Robert E. Lewis.

Defendant was tried during the 8 February 1993 Criminal Session of Gaston County Superior Court. The State presented evidence, including Wright's recent possession of a Taurus .357 caliber pistol, which linked defendant and Wright to Ford's death. This same type of pistol was mentioned in defendant's statement. Furthermore, a .38/.357 caliber bullet was found near the location of Ford's body. A firearms expert, after examining the bullet, concluded from the bullet markings that the bullet could have been fired from a Taurus-manufactured pistol.

At trial, defendant contended that this Taurus pistol was never linked in any way to the murder. Defendant requested a special instruction that persons other than defendant committed the murder; the trial court denied the request. On 11 February 1993, the jury acquitted defendant of murder and armed robbery and convicted defendant of conspiracy to commit murder. Defendant agreed to testify against Donal Wright, and on 30 June 1993, Judge Lewis sentenced defendant to eight years in prison. Defendant gave notice of appeal from his conviction and sentence on 30 June 1993.

On 1 September 1993, after a jury had been impaneled in the Wright case, defendant refused to testify against Wright, asserting his privilege against self-incrimination because his case was before the Court of Appeals. The State took a voluntary dismissal as to the charge of conspiracy to commit murder against Wright. Wright made a motion to dismiss the remaining charges of second degree murder and armed robbery which the trial court granted.

On 23 February 1994, defendant filed a motion for appropriate relief seeking to have his conviction reversed due to the dismissal of charges against Donal Wright. Judge John Gardner granted defendant's motion. On 4 March 1994, the State made a Motion to File Addendum to the Record on Appeal with a copy of Judge Gardner's

Order granting defendant's motion for appropriate relief. This Court treated the State's motion as a petition for writ of certiorari. This Court held that, since the case was in the appellate division, the trial court was without jurisdiction to rule upon the motion for appropriate relief; therefore, the order was vacated. Defendant filed a motion for appropriate relief in this Court on 25 March 1994. We now address this motion.

**[1]** Where all participants charged in a conspiracy have been legally acquitted, except the defendant, the conviction against the sole remaining defendant must be set aside. *State v. Raper*, 204 N.C. 503, 504, 168 S.E. 831, 832 (1933). The policy behind this rule is that there is no one left with whom the remaining party could have agreed; therefore, there is no conspiracy without an unlawful agreement. *State v. Littlejohn*, 264 N.C. 571, 574, 142 S.E.2d 132, 134 (1965).

Defendant contends that the dismissal of the conspiracy to commit murder charge against Donal Wright after the jury was impaneled constituted an acquittal under *State v. Raper*, 204 N.C. 503, 168 S.E. 831. In *Raper*, defendant was tried with two alleged coconspirators. Five people were part of the conspiracy, but two were acquitted at a previous trial. The evidence presented at trial pointed to defendant's codefendants as coconspirators. The defendant was convicted while his codefendants were acquitted. The Supreme Court held that one person may not be convicted of conspiracy where all the other defendants charged with conspiracy are acquitted. *Id.* at 504, 168 S.E. at 831-32.

In the present case, we have two conspirators tried at separate trials. The codefendant was tried at a separate subsequent trial from the defendant in the present case. Thus, *Raper* is distinguishable. There is no case law in North Carolina that speaks directly to the facts at hand. Some courts have refused to extend the general rule, that the conviction of only one defendant in a conspiracy prosecution will not be upheld where all alleged coconspirators are acquitted, where the alleged coconspirators are acquitted in a separate subsequent trial. Michelle Migdal Gee, Annotation, *Prosecution or Conviction of One Conspirator As Affected By Disposition of Case Against Coconspirators*, 19 A.L.R.4th 192 § 3[b] (1983). Persuasive authority, which sheds light on this question, is found in the following:

> We think that the verdict of a jury on a separate trial, finding one of two persons charged with conspiracy to be guilty, concludes

also the guilt of the other for purposes of that trial, otherwise no conviction could have been had. . . . This element of the crime having been established as against the convicted defendant, the crime was complete and the conviction final as to him, irrespective of what some other jury on different evidence might decide. . . . The subsequent acquittal of the other necessarily amounts to no more than that there was a failure of proof as to him. . . . It seems to us that reason and sound logic do not support the rule where one of two conspirators is convicted in a separate trial, that he shall be discharged because the second may be acquitted for a multitude of reasons having nothing to do with his guilt.

*Gardner v. Maryland*, 286 Md. 520, 527, 408 A.2d 1317, 1321 (1979) (quoting *Platt v. State*, 8 N.W.2d 849, 855 (Neb. 1943)). We now adopt this view holding that the conviction of one defendant in a conspiracy prosecution will be upheld where all alleged coconspirators are acquitted in a separate subsequent trial. Defendant's motion for appropriate relief is denied.

[2] In his first assignment of error, defendant argues that the trial court committed reversible error in denying defendant's motion to suppress a statement given by him as a result of a polygraph examination because the statement was obtained in a coercive and oppressive manner. We disagree.

*Miranda* warnings are required where a defendant undergoes custodial interrogation. *State v. Phipps*, 331 N.C. 427, 441, 418 S.E.2d 178, 185 (1992). Custodial interrogation " 'mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L.Ed.2d 694, 706 (1966)). In order to determine whether a person is in custody, the test is whether a reasonable person in the suspect's position would feel free to leave. *State v. Rose*, 335 N.C. 301, 334, 439 S.E.2d 518, 536 (1994).

In this case, Gaston County police officers interviewed defendant on 9 February 1990. Defendant argues the environment was coercive and oppressive because he was interviewed for four hours, where one of the interviewing officers was "hot-headed" and used abusive language. Defendant also contends that the second interview would not have occurred if he had been advised of his *Miranda* warnings at the first interview. "The Fifth Amendment requires suppression of a con-

fession that is the fruit of an earlier statement obtained in violation of *Miranda* only when the earlier inadmissible statement is 'coerced or given under circumstances calculated to undermine the suspect's ability to exercise his or her free will.' " *State v. Morrell*, 108 N.C. App. 465, 474, 424 S.E.2d 147, 153 (quoting *Oregon v. Elstad*, 470 U.S. 298, 309, 84 L.Ed.2d 222, 232 (1985)), *disc. review denied, cert. denied, and appeal dismissed*, 333 N.C. 465, 427 S.E.2d 626 (1993). In the instant case, the officers took defendant to Gastonia to be questioned with his consent. Defendant concedes that he was free to leave and voluntarily gave a statement to police officers. Defendant was not handcuffed during the interview, was left alone, and allowed to go to the vending machines. Thus, defendant's statement was neither coerced nor made under circumstances calculated to undermine his free will. Furthermore, defendant was not in custody and not entitled to *Miranda* warnings before making any statements. Therefore, the second statement is not the fruit of an earlier illegally obtained statement.

At this second interview, defendant asserts that his constitutional rights against self-incrimination and due process were violated when the polygraph examiner confronted defendant about patterns of deception and questioned him off the polygraph. Officers informed defendant of his *Miranda* warnings prior to the administration of the polygraph and prior to defendant's written statement. He signed a waiver form and polygraph consent form prior to the polygraph. We first recognize that defendant was not in custody during this questioning because he voluntarily came to the police station for the polygraph and was free to leave at any time. Hence, no *Miranda* warnings were required. However, even assuming that defendant was in custody, defendant was given his *Miranda* warnings, which he waived. The voluntariness of a confession is examined in light of the totality of the circumstances. *State v. Barlow*, 330 N.C. 133, 140-41, 409 S.E.2d 906, 911 (1991). Looking at the totality of the circumstances, this confession was voluntary in that defendant voluntarily came to the police station, voluntarily submitted to the polygraph, and was free to leave at any time. Therefore, we hold that neither the polygraph operator asking questions off the polygraph nor questioning by officers vitiated defendant's waiver of his *Miranda* warnings with respect to this second statement.

**[3]** Defendant next contends that the trial court committed reversible error by overruling defendant's objection and denying his motion to strike irrelevant testimony concerning the purchase of a

firearm because the firearm was never connected to the murder which defendant was alleged to have conspired to commit and such evidence carried a great risk of undue prejudice. We disagree.

Relevant evidence is that which has the tendency to prove or disprove a material fact. N.C. Gen. Stat. § 8C-1, Rule 401 (1992). Relevant evidence is admissible, N.C. Gen. Stat. § 8C-1, Rule 402 (1992); however, relevant evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice. N.C. Gen. Stat. § 8C-1, Rule 403 (1992).

In the instant case, Donal Wright's possession of a Taurus .357 pistol on 19 October 1989 is relevant where the victim died from gunshot wounds, a spent .38/.357 bullet was found in close proximity to the victim's body, and this bullet had markings consistent with those of a Taurus pistol. The facts at hand are similar to those in *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984). In *Bullard*, the victim died of multiple knife and gunshot wounds, and a .22 caliber bullet was found in the victim's body. The court held that the admission of evidence of defendant's possession of a .22 caliber pistol approximately three months prior to the murder was proper. *Id.* at 156-57, 322 S.E.2d at 386. Likewise, in the present case, the testimony indicates that defendant's coconspirator was in possession of a Taurus .357 caliber pistol approximately two months before the victim was murdered. The acts of a coconspirator in furtherance of that conspiracy are admissible against all conspirators. *State v. Gibbs*, 335 N.C. 1, 47-48, 436 S.E.2d 321, 347-48 (1993), *cert. denied*, —— U.S. ——, 129 L.Ed.2d 881 (1994). Therefore, the testimony related to defendant's coconspirator possessing a .357 caliber pistol is admissible against defendant.

In his last assignment of error, defendant contends that the trial court erred in denying defendant's request for a special instruction which would have allowed the jury to consider evidence which might have tended to show that the crime with which defendant was charged was committed by someone else. We disagree.

The trial court must give a requested instruction when supported by the evidence in the case. *State v. Rose*, 323 N.C. 455, 458, 373 S.E.2d 426, 428 (1988); *State v. Lane*, 115 N.C. App. 25, 31, 444 S.E.2d 233, 237, *disc. review denied*, 337 N.C. 804, 449 S.E.2d 753 (1994). Here, even if failure to give this instruction was error, the error would at most be harmless in light of the overwhelming evidence of defend-

ant's guilt, including his confession and coconspirator Wright's possession of the same caliber and type of weapon which killed the victim.

No error.

Chief Judge ARNOLD and Judge LEWIS concur.